**In re James E. TWITCHELL, Jeanine P. Twitchell, Debtors.**

**OREM POSTAL CREDIT UNION, Plaintiff,**

**v.**

**James E. TWITCHELL, Defendant.**

**Bankruptcy No. 85A–01773.**

**Adv. No. 85PA–922.**

United States Bankruptcy Court, D. Utah, C.D.

April 15, 1987.

---

1. Cf. *In re New England Metal Co.* 67 B.R. 53 (Bkrtcy.D.R.I.1986).

Bruce L. Richards and Marcie E. Schaup, Bruce L. Richards & Associates, Salt Lake City, Utah, for Orem Postal Credit Union, plaintiff.

El Ray Baird, Provo, Utah, for James E. Twitchell, defendant.

## MEMORANDUM OPINION

JOHN H. ALLEN, Bankruptcy Judge.

### PROCEDURAL BACKGROUND

This matter came before the Court on plaintiff's Motion for a New Trial or to Amend the Findings of Fact, Conclusions of Law, and Judgment.

The material facts giving rise to this controversy are as follows.

### FACTS

James and Jeanine Twitchell filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 3, 1985. Subsequently, Orem Postal Credit Union ("plaintiff") filed an adversary proceeding against James Twitchell ("defendant") seeking a determination that the debt owed to it by the defendant was nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6).

Trial was held on June 19, 20, and 23, 1986. At the conclusion of the trial, the Court made findings of fact and conclusions of law on the record. As part of the decision, the Court found that the defendant, as president and treasurer of Orem Postal Credit Union, was obligated to the plaintiff in the amount of $20,958.37 for the failure to apply all of the proceeds from the sale of his home to satisfy his obligation to the plaintiff, the unauthorized payment of payroll checks, the failure to withhold payroll taxes from his payroll checks, the improper approval of a loan to W. LeGrand

Ellison and himself, and the unauthorized release of the plaintiff's lien on his property. Despite this finding, the Court held that the obligation was dischargeable because the plaintiff failed to prove reasonable reliance under section 523(a)(2)(A), the necessary fraud under section 523(a)(4), and the requisite intent under section 523(a)(6). On July 29, 1986, the Court entered Judgment in favor of the defendant dismissing the complaint and awarding defendant attorneys' fees and court costs.

On August 22, 1986, the Court heard plaintiff's Motion for a New Trial or to Amend the Findings, Conclusions, and Judgment. After considering the arguments and memoranda of counsel and the applicable statutes and case authorities, the Court denies the plaintiff's motion for a new trial but amends the findings, conclusions, and judgment.

### DISCUSSION

██ Under section 523, certain kinds of debts are excepted from discharge. Such exceptions are essentially there to prevent a debtor from avoiding, through bankruptcy, the consequences of his wrongful conduct. These exceptions are to be narrowly construed so as to assure that the basic bankruptcy policy of giving an honest debtor a fresh start is not frustrated. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Black,* 787 F.2d 503 (10th Cir.1986); *In re Huff,* 1 B.R. 354 (Bkrtcy.D.Utah 1979).

One exception is set forth in section 523(a)(4) which provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....[1]

This section creates an exception for a debt based on fraud or defalcation while acting in a fiduciary capacity, and embezzlement or larceny whether or not acting in a fiduci-

---

1. Although Section 523(a)(4), unlike its predecessor, "does not specify that debts arising from misappropriation by a fiduciary shall be except-

ed from discharge, the term 'defalcation' subsumes misappropriation." *In re Materetsky,* 28 B.R. 499, 502 (Bkrtcy.S.D.N.Y.1983).

ary capacity. 3 COLLIER ON BANK-RUPTCY § 523.14 at 523–88 (15th ed. 1986).

To obtain a determination that a debt is nondischargeable under section 523(a)(4), the complaining creditor must prove two elements: (1) that the defendant was acting in a fiduciary capacity and (2) that while acting in a fiduciary capacity, the defendant committed a defalcation.

*Fiduciary Capacity*

■ The term "fiduciary capacity" as used in section 523(a)(4) applies only to technical trusts, express trusts, or statutorily imposed trusts and not to fiduciary relationships which arise out of equitable or implied trusts or trusts implied by law arising out of a contract. *In re Owens*, 54 B.R. 162, 164 (Bkrtcy.D.S.C.1984). The elements for an express trust include (1) sufficient words to create a trust, (2) a clearly defined trust res, and (3) an intent to create a trust relationship. *In re Kwiat*, 62 B.R. 818, 821 (Bkrtcy.D.Mass.1986).

■ Furthermore, the trust or fiduciary duty must have existed prior to the wrongdoing from which the debt arose. *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986); *In re Romero*, 535 F.2d 618, 621 (10th Cir.1976); *In re Owens*, 54 B.R. at 164; *In re Schwartz*, 36 B.R. 355, 358 (Bkrtcy.E.D.N.Y.1984).

■ The question of who is a fiduciary for purposes of section 523(a)(4) is one of federal law. *In re Black*, 787 F.2d at 506. However, state law is an important factor in determining when a trust relationship exists. *Id.*

■ Title 7 of the Utah Code, entitled Financial Institutions, governs the creation and regulation of financial institutions. Article 7 of this Title, which governs savings and loan associations, provides that officers of associations occupy a fiduciary relationship. Utah Code Ann. § 7–7–15 (1953). In contrast, Article 9, which governs credit unions, has no similar provision. Nevertheless, this Court is of the opinion that an officer of a credit union should also logically be considered to occupy a fiduciary relationship. Furthermore, Article 1

authorizes the commissioner of financial institutions to remove any officer of an institution who has breached his fiduciary duty. Utah Code Ann. § 7–1–308 (1953). By implication, therefore, to be removed for breach of a fiduciary duty, officers of financial institutions governed by this Title must be considered to occupy a fiduciary relationship.

Furthermore, the Fourth Circuit in *Harper v. Rankin*, 141 F. 626 (1905) held:

The rights and powers of a vice president of a bank, having the management and control of its affairs, are such as he is bound to exercise for the benefit of others. His relation to the funds of the bank is that of a fiduciary, and an indebtedness arising from the embezzlement or misappropriation of such funds by him is incurred in that capacity.

*Id.* at 630.

At trial in this case, the Court found that the defendant had been acting in a fiduciary capacity within the meaning of section 523(a)(4) while serving as president and treasurer of Orem Postal Credit Union.

*Defalcation*

■ The term "defalcation" as used under section 523(a)(4) does not have a precise definition and no legislative history or comment exists to aid the interpretation.

The semantical difficulties concerning defalcation were first addressed in *Central Hanover Bank & Trust v. Herbst*, 93 F.2d 510 (2nd Cir.1937) wherein Judge Leonard Hand wrote:

Colloquially perhaps the word, "defalcation," ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts....

....

... We do not hold that no possible deficiency in a fiduciary's accounts is dischargeable; in *In re Bernard*, 87 F.2d 705, 707, we said that "the misappropriation must be due to a known breach of duty, and not to mere negligence or mistake." Although that word probably carries a larger implication of misconduct

than "defalcation," "defalcation" may demand some portion of misconduct; we will assume arguendo that it does.

. . . .

All we decide is that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a "defalcation" though it may not be "fraud" or an "embezzlement," or perhaps not even a "misappropriation."

*Id.* at 511–512. After *Central Hanover,* however, case law under the former Bankruptcy Act was not in agreement as to the scope of conduct constituting defalcation.

The Court in *Kadish v. Phx. Scotts Sports Co.,* 11 Ariz.App. 575, 466 P.2d 794 (1968) held that "[a] defalcation clearly requires acts amounting to misconduct or reflecting bad faith, and not merely inadvertence, mistake or negligence (citations omitted). But the conduct does not have to be criminal or malicious, only willful and wrongful. *Bannon v. Knauss,* 57 Ohio App. 288, 13 N.E.2d 733 (1937)." *See also, Western Surety Co. v. Reed,* 79 N.M. 647, 447 P.2d 672 (1968); *Ivy v. Plyler,* 246 Cal.App.2d 678, 54 Cal.Rptr. 894 (1966).

The Sixth Circuit in *In re Johnson,* 691 F.2d 249 (6th Cir.1982), applied an objective standard in determining whether a contractor's failure to make payment of funds entrusted to him in accordance with the Michigan Building Contract Fund Act constituted defalcation. The court reasoned that "[h]ad Congress intended to reach only intentional or bad faith defalcation, it could have easily narrowed the sweep of the definition by requiring a special mental element." *Id.* at 254. Furthermore, defalcation was a "more encompassing term than embezzlement or misappropriation." *Id.* In defining the scope of conduct falling within the definition of defalcation, the court held:

The objective fact that monies paid into the building contract fund were used for purposes other than to pay laborers, subcontractors or materialmen first is sufficient to constitute a defalcation under section 17(a)(4) so long as the use was not the result of mere negligence or a mistake of fact; subjective intent to violate a known fiduciary duty or bad faith is irrelevant.

*Id.* at 257.

Several other courts concluded that defalcation also included innocent or simple defaults or mere failures to account for funds. *See, Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980); *Matter of Kawczynski,* 442 F.Supp. 413 (W.D.N.Y. 1977); *First Citizens Bank & Trust Co. v. Parker,* 225 N.C. 480, 35 S.E.2d 489 (1945).

Unlike the case law under the Bankruptcy Act, the courts interpreting the scope of defalcation under the Bankruptcy Code are in agreement on several points. First, defalcation is the failure to account for money or property that has been entrusted to one. *See, In re Wolfington,* 48 B.R. 920, 923 (Bkrtcy.E.D.Pa.1985); *In re Owens,* 54 B.R. 162; *In re Cowley,* 35 B.R. 526 (Bkrtcy.D.Kan.1983); *In re Waters,* 20 B.R. 277 (Bkrtcy.W.D.Tex.1982). Second, defalcation is a broader term than either embezzlement or misappropriation.[2] *See In re Wolfington, supra; In re Weaver,* 41 B.R. 649 (Bkrtcy.W.D.Okla.1984); *In re Cowley, supra; In re Waters, supra.* Third, defalcation is evaluated by an objective standard and no element of intent or bad faith need be shown. *See In re Gonzales,* 22 B.R. 58 (Bkrtcy. 9th Cir.1982); *American Ins. Co. v. Lucas,* 41 B.R. 923 (D.W.D.Pa.1984); *Martino v. Brown,* 34 B.R. 116 (D.N.M.1983); *In re Petersen,* 51 B.R. 486 (Bkrtcy.D.Kan.1985); *In re Gagliano,* 44 B.R. 259 (Bkrtcy.N.D.Ill.E.D.1984); *In re Waters, supra.*

However, uncertainty regarding the scope of conduct constituting defalcation still exists. Courts have used a variety of

---

**2.** Embezzlement under section 523(a)(6) has been defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into who hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." *In re Black,* 787 F.2d at 507. Misappropriation has been defined as involving "a known breach of the duty and not to mere negligence or mistake." *In re Bernard,* 87 F.2d 705, 707 (2nd Cir.1937).

terms to describe the kind of conduct constituting defalcation. For example, the court in *Cowley* wrote that defalcation "is the slightest misconduct, and it may not involve misconduct at all. Negligence or ignorance may be defalcation." 35 B.R. at 529. The *Wolfington* court concluded that "[i]t is irrelevant that the default by the fiduciary was innocent." 48 B.R. at 923. In *Waters,* the court found that a "simple failure to account for funds ... will render the ensuing debt nondischargeable...." 20 B.R. at 280.

Section 523(a)(4) excepts from discharge a debt arising from "defalcation while acting in a fiduciary capacity." Defalcation is the failure to account for funds entrusted to one; fiduciary capacity cannotes the idea of trust or confidence. *In re Romero,* 535 F.2d 621. The failure to account for funds results in a breach of this trust or confidence. Negligence is defined as the breach of a duty recognized by the law which requires a person to conform to a certain standard of conduct. W. Prosser, LAW OF TORTS § 30, at 143 (1971). Therefore, in the opinion of the Court, negligence would be a more accurate term to use to describe this failure to account for funds as a fiduciary. Nevertheless, this Court accepts the use of such terms as "innocent," "ignorant," or "simple" default or failure to the extent that they are intended to describe this breach of duty.

 In this case, the defendant, as president and treasurer of the credit union, failed to properly turnover all of the proceeds from the sale of his home to the plaintiff, issued unauthorized payroll checks to himself, neglected to withhold payroll taxes from his paychecks, approved a loan to W. LeGrand Ellison and himself in violation of the policies and practices of the credit union, and released the plaintiff's lien against his property without approval. Clearly, the defendant's conduct constituted a defalcation while acting in a fiduciary capacity within the meaning of section 523(a)(4). The breaching of this fiduciary duty is a sufficiently bad act to except the ensuing debt from discharge. The requisite "badness," to conform with the spirit of the bankruptcy laws, is supplied by the special legal status of a fiduciary and the breach of the attendant duties and higher standard of dealing. *In re Johnson,* 691 F.2d at 256.

### CONCLUSION

In accordance with the foregoing, the Court finds that the amount of $20,958.37 is nondischargeable as a debt arising out of the defendant's defalcation while acting in a fiduciary capacity, under Section 523(a)(4).

Furthermore, the previous Judgment entered in this case is set aside. Counsel for the plaintiff is directed to prepare and submit a new judgment in accordance with this memorandum opinion.