UNITED STATES of America, Appellee,

v.

**Ronald W. WRIGHT, Appellant.**

No. 87–1362.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 31, 1987.

Decided Dec. 23, 1987.

---

William S. Smith, Des Moines, Iowa, for appellant.

Joseph S. Beck, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, MAGILL, Circuit Judge, and LARSON,[*] Senior District Judge.

LARSON, Senior District Judge.

Defendant Ronald W. Wright was convicted of nine of fifteen counts of misapplication of bank funds, in violation of 18 U.S.C. § 656. The district court sentenced him to concurrent eighteen month terms of imprisonment on Counts 1, 9, 11, 13, and 15. Sentence was suspended and Wright was placed on concurrent three year terms of probation on Counts 6, 10, 12, and 14. As a condition of his probation, the Court ordered the defendant to make restitution in the sum of $414,774.35, with credit given for any amounts paid by any other person.

Defendant has appealed, alleging that (1) the trial court erred in not declaring a mistrial based upon statements made by the prosecutor during the rebuttal portion of his closing argument, and (2) there was insufficient evidence to sustain the jury's guilty verdicts on Counts 1 and 10. We affirm, except as to Count 10. We agree that there is insufficient evidence to support the jury's verdict on Count 10, and, accordingly, we reverse defendant's conviction on that count.

[*] The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

## I. BACKGROUND

Defendant was the chief executive officer of the Oakland Savings Bank in Oakland, Iowa, from 1972 through the spring of 1984. In the late 1970's, defendant and a number of other local individuals sought to bring new business to Oakland. They formed a company called Oakland Forgings, which manufactured parts for various other concerns. Defendant was chairman of the board. Unfortunately, the company lost money throughout its history.

In 1982, Oakland Forgings reached its loan limit at the Oakland Savings Bank. At this time, defendant was actively involved both in overseeing Oakland Forgings' business and in overseeing the day to day operations of the bank. Defendant called numerous meetings of Oakland Forgings' board of directors to discuss the company's financial condition and to find ways to obtain the funds needed to keep the company going. As a result of these meetings, the Oakland Savings Bank made a series of loans to five individuals on Oakland Forgings' board of directors: Robert Emken, Mark Gardner, Charles Gross, Harry Sivers, and Donald Hummel. Proceeds from these loans were invested directly into Oakland Forgings. Some of the loans were made through internal debit slips only; for others, the individuals signed blank promissory notes at defendant's request, which the defendant then filled out.

By 1984, Oakland Forgings' losses were so large that it was forced to declare bankruptcy. That same year, the Oakland Savings Bank was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) stepped in. Defendant was indicted two years later for misapplication of bank funds as a result of the loans to Emken, Gardner, Gross, Sivers, and Hummel.

The court instructed the jury that defendant was liable for misapplication if the individuals to whom the loans were made were not aware their names were being used for the debt or if defendant had assured them they would not be obligated to repay the loan in the event of default. At trial, these five individuals testified they believed they were not personally responsible for the loans, since the defendant had told them the loans would be repaid from Oakland Forgings' profits. As to some transactions, they also testified that they did not remember signing the notes, that they believed they were signing in their corporate capacity only, that they signed blank notes and were never informed of the amounts, or that they believed the amounts were for far less than actually appeared on the bank records.

Wright's defense was premised on the fact that it was in these individuals' financial interest to disclaim responsibility for the loans since the FDIC had instituted civil actions against them for repayment. In fact, all five individuals had had substantial net worths at the time the loans were made, but two had subsequently filed for bankruptcy under Chapter 11.

## II. THE PROSECUTOR'S COMMENTS

In his rebuttal argument, the prosecutor attempted to undercut the defense argument that each of the five had a financial motive to lie by stating, "[a]ssume this is a debt that has been wiped out in bankruptcy. They have no motive if...." Upon defense counsel's objection, the district court immediately instructed the jury to disregard the prosecutor's statement concerning the effect of bankruptcy and again after argument instructed the jury to disregard the bankruptcy issue in weighing credibility. Defense counsel made no motion for a mistrial or for a new trial, stating after the court's second curative instruction that "[t]he Court's statement is quite acceptable to the defendant."

Defendant now contends on appeal that the court's instructions did not cure the prejudice created by the prosecutor's inference that all five individuals had declared bankruptcy (instead of just two) and that all of their loans would be discharged when in fact under Chapter 11 this may or may not be true.

While we are troubled by the prosecutor's comments, we find insufficient grounds for declaring a mistrial in this case. Defense counsel himself brought out

the bankruptcy status of two of the five individuals on cross-examination. One of the five, Robert Emken, testified that he believed his debt would be discharged through his Chapter 11 bankruptcy proceeding. The other, Charles Gross, testified that he simply did not know whether he could avoid his debts and retain his land as a result of the Chapter 11 proceedings. Moreover, the court correctly instructed the jury that:

> [I]n weighing the credibility of the witnesses, you shall give no consideration one way or the other as to whether or not the evidence relating to bankruptcy will affect their obligation to pay the debts one way or another. The record is not complete enough on that for the matter to be considered.

Defendant's counsel expressed satisfaction with the district court's handling of the matter at trial and never requested a mistrial or a new trial on the grounds that the prosecutor's statements deprived the defendant of a fair trial. Defendant's failure to raise the issue before the district court precludes our review unless we find plain error. *See United States v. Roenigk,* 810 F.2d 809, 815 (8th Cir.1987); *United States v. Beran,* 546 F.2d 1316, 1319–20 (8th Cir. 1976), *cert. denied,* 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). Under these circumstances, we do not believe the prosecutor's comments require a reversal of the defendant's convictions, particularly since the district court took immediate action to cure any prejudice which may have resulted. *See United States v. Dougherty,* 810 F.2d 763, 767–68 (8th Cir.1987); *United States v. Pierce,* 792 F.2d 740, 742 (8th Cir.1986); *United States v. Hernandez,* 779 F.2d 456, 458–59 (8th Cir.1985).

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also challenges the sufficiency of the evidence under Counts 1 and 10 of the indictment. In evaluating the sufficiency of the evidence, the Court views the evidence presented to the jury in the light most favorable to the government, giving the government the benefit of all reasonable inferences therefrom and overturning the jury's verdict only if the evidence so viewed is such that a reasonable-minded jury must have entertained a doubt as to the government's proof of one of the essential elements of the offense. *United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986).

Count 1 of the indictment alleged that defendant had misapplied the funds of the Oakland Savings Bank by making a loan to B.H.M. Enterprises for the benefit of Oakland Forgings. The B.H.M. account was opened by Robert Emken, Harry Sivers, and Mark Gardner to service funds they received as a result of lease payments on machinery they and others leased to Oakland Forgings. On February 5, 1982, $60,000 was deposited in the B.H.M. account. That same day, $60,000 was transferred by debit slip from the B.H.M. account to Oakland Forgings' account at the bank. Both transactions were handled by defendant Wright. A note for $60,000 was signed by all five directors on Oakland Forgings' board, although two of the five—Charles Gross and Donald Hummel—had no relationship with B.H.M. Enterprises.

At trial, all five individuals disclaimed responsibility for the loan. Robert Emken testified that he believed that any notes he signed at defendant's request were for short-term operating capital and would be repaid from the proceeds received by Oakland Forgings. Emken also stated that he had no knowledge of $60,000 being run through the B.H.M. account and did not know why it had been. Harry Sivers and Mark Gardner testified to the same effect. In addition, Sivers testified that he did not open the bank statements for the B.H.M. account which reflected the $60,000 deposit and withdrawal, because the leasing payments for which the account had been opened had stopped and he believed there was no activity on the account. Both Sivers and Gardner denied ever agreeing to invest $60,000 on behalf of B.H.M. in Oakland Forgings. Donald Hummel and Charles Gross testified that they had no knowledge of the B.H.M. note and had no relationship to B.H.M. Enterprises.

While we have some difficulty accepting all of the testimony offered by these five individuals, we find there is sufficient evidence from which a jury could conclude either that they were told by the defendant that the $60,000 obligation was Oakland Forgings' alone or that they were unaware that their names were being used for the debt. Accordingly, we will not disturb the jury's guilty verdict on Count 1.

■ Count 10 of the indictment alleged that defendant misapplied bank funds by making a loan to Harry Sivers for the benefit of Oakland Forgings. Sivers, in addition to being on the board of directors of Oakland Forgings, had been on the Oakland Savings Bank board of directors since 1972. In his capacity as a bank director, Sivers reviewed and approved on a monthly basis the loans made by the bank for over $1000. The evidence relating to Count 10 of the indictment showed that on October 15, 1982, $62,500 was transferred to Oakland Forgings' account by use of a debit slip in Sivers' name, along with another $62,500 secured by a note from Robert Emken. There was no note relating to Sivers' $62,500 transaction, although the bank sold both $62,500 loans to the American National Bank of Omaha. On May 3, 1983, Sivers signed a renewal note for $70,000, which paid off the $62,500 debt.

Sivers attempted to disclaim knowledge of both the $62,500 loan and the $70,000 renewal note at trial by claiming he could not recall either obligation, but he admitted on cross-examination he had told the Federal Bureau of Investigation that the $70,000 note was a renewal note. He further testified he would not normally sign a renewal note unless he was responsible for the underlying debt; and he admitted that he decided in 1983 not to invest any *more* in Oakland Forgings, since he had already

invested enough and did not want his wife to know how much he had put into the company.

In view of this testimony, we find insufficient evidence to sustain the jury's guilty verdict as to Count 10: the government failed to prove beyond a reasonable doubt that defendant told Sivers he would not be personally responsible for the $62,500 loan which forms the basis of this count.[1] Because a reasonable-minded jury *must* have entertained a doubt as to whether Sivers believed the bank would look solely to Oakland Forgings for repayment of the $62,500 loan, the verdict as to Count 10 must be reversed.

## V. CONCLUSION

For all of the foregoing reasons, defendant's convictions are affirmed, except as to Count 10, which is reversed.

MAGILL, Circuit Judge, concurring in part and dissenting in part.

I agree with the court's reasoning and result, except as it relates to the reversal of Wright's conviction on Count 10 of the indictment.

The court concludes that Sivers must have believed that he was personally responsible for the $62,500 loan represented by the debit slip, which is the basis of Count 10. The majority reaches this conclusion merely because (1) the $70,000 note signed by Sivers in 1983 was used to repay the $62,500 loan, and (2) Sivers testified on cross-examination that he did not *normally* sign renewal notes unless he was responsible for the original obligation. While this evidence *might* plausibly lead a jury to entertain a reasonable doubt as to Wright's guilt, it is not so overwhelming that "a reasonable-minded jury *must* have enter-

---

1. The dissent cites evidence from which it finds a jury could conclude that Sivers believed he was not personally responsible for the debt. We agree there is a modicum of evidence to support this conclusion, but do not find it to be sufficient to establish defendant's guilt beyond a reasonable doubt in view of Sivers' position as a bank director, his own testimony concerning the $62,500 obligation and the $70,000 renewal note which paid off that obligation, and his

admissions concerning the extent of his investment in Oakland Forgings. "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *Clark v. Procunier,* 755 F.2d 394, 396 (5th Cir.1985); *Cosby v. Jones,* 682 F.2d 1373, 1383 (11th Cir.1982).

tained a reasonable doubt as to the government's proof" * * *. *United States v. Noibi*, 780 F.2d at 1421 (emphasis in original).

This is particularly true here, because the testimony relied upon by the majority is undermined by other testimony, which is sufficient to allow the jury to find guilt beyond a reasonable doubt.

The district court correctly instructed the jury that the government, in order to meet its burden on the misapplication element, had to prove beyond a reasonable doubt one of the following:

1. That [Wright] knew the debtor named in the note was not aware his name was being used for the debt.

or

2. That [Wright] assured the named debtor that he would not be obligated to repay the loan in the event of default and that the Bank would look solely to Oakland Forging [sic] for repayment.

Instructions to the Jury, Number 9.

A careful review of the trial transcript, in light of the heavy burden borne by a defendant seeking to overturn a jury verdict, *id.* at 1421, compels a conclusion that there is sufficient evidence to sustain Wright's conviction on Count 10.

Sivers testified that he did not authorize the $62,500 debit slip, and that he did not remember signing any note supporting the debit slip. No such note was introduced into evidence. Sivers also testified that he did not remember signing the $70,000 renewal note. Moreover, in response to the following question, "Well, would you have signed any of these notes making yourself personally responsible and then giving the money to Oakland Forgings?" Sivers answered, "No. They were signed for the specific purpose of Oakland Forgings, for the benefit of Oakland Forgings." A jury could reasonably infer from this statement that, even if Sivers had authorized the notes, he believed that he would not be personally liable on any of them, but that the bank would instead look to Oakland Forgings. The fact that he would not *normally* sign renewal notes unless he believed he was responsible for the underly-

ing obligation is not sufficient to ascribe to the jury reasonable doubt as to whether Sivers believed that he was personally liable for *this* $62,500 loan. The jury could and did conclude from the evidence that Sivers did not believe he was personally liable for the debt.

Because I believe that there is sufficient evidence to sustain the jury's verdict of guilty on Count 10, I respectfully dissent from the court's reversal of the conviction.