**In re Ronald Walter WRIGHT and Jo Ann Wright, Debtors.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Ronald Walter WRIGHT, Defendant.**

**Bankruptcy No. 485–00059.**
**Adv. No. 485–0058.**

United States Bankruptcy Court,
D. South Dakota.

June 24, 1988.

■■■■■■■■■■

T. Randall Wright, Dixon & Dixon, P.C., Omaha, Neb., Roger W. Damgaard, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, S.D., for plaintiff.

John Harmelink, Harmelink & Fox Law Offices, Yankton, S.D., for defendant.

PEDER K. ECKER, Bankruptcy Judge.

### Introduction and Procedural Background

This matter is before the Court on the plaintiff's motion for summary judgment on its complaint to determine the dischargeability of certain debts of Ronald Wright. The original complaint of the plaintiff, the Federal Deposit Insurance Corporation (FDIC), alleged that the debtor, Ronald W. Wright, while serving as a director, officer, and employee of the Oakland Savings Bank in Oakland, Iowa (the Bank), committed certain acts in 1982 constituting fraud or defalcation, and caused willful and malicious injury to the Bank. The FDIC, as the receiver of the Bank, requested a judgment against the debtor for any damages and loss suffered by the FDIC as a result of the debtor's acts, and that this indebtedness to the FDIC be declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6).

In September, 1987, the FDIC moved to amend its complaint to include a cause of action for nondischargeability pursuant to 11 U.S.C. § 523(a)(7). In January, 1988, this Court allowed the FDIC to supplement its pleading pursuant to Fed.R.Civ.P. 15(d). An "amended complaint" was filed on February 8 and the debtor-defendant's answer was filed on February 18.

On February 19, 1988, the FDIC moved for summary judgment on its amended complaint. It alleged that the issues of fraud, defalcation, and willful and malicious injury had already been litigated in an Iowa Federal District Court criminal action against Wright and, thus, the debtor was collaterally estopped from relitigating these issues. In addition, the FDIC requested that the restitution to be paid to the FDIC, ordered as a condition of Wright's probation, be declared nondischargeable as a matter of law.

The debtor-defendant resisted the motion for summary judgment. He alleged that the requisite intent necessary to establish fraud or defalcation pursuant to 11 U.S.C. § 523(a)(4) had not been determined. He also stated that specific intent to harm, as required by 11 U.S.C. § 523(a)(6), had not been found. Last, he asserted that the restitution ordered in his criminal sentence was compensation for the actual pecuniary loss suffered by the FDIC and should be declared dischargeable.

The Court took the summary judgment matter under advisement. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### Facts

The debtors, Ronald and JoAnn Wright, filed their Chapter 7 bankruptcy petition on February 12, 1985. After requesting and receiving an extension of time to file a complaint to determine the dischargeability of a debt, the FDIC filed its complaint against Ronald Wright on August 30, 1985.

While the FDIC's nondischargeability complaint was pending in this Court, the debtor, Ronald Wright, was indicted by a federal grand jury in the Southern District of Iowa on fifteen counts of willfully and knowingly misapplying and causing to be misapplied monies and funds of the Oakland Savings Bank, with the intent to injure and defraud the Bank, in violation of 18 U.S.C. § 656. The indictment charged that Wright, as an officer and director of the Bank, made nominee loans[1] in 1982 to certain individuals for the benefit of Oakland Forging, Inc. At the time of making the

---

1. Nominee loans are those in which a person borrows money from a bank and in turn loans that money to a third party. *See* Jury Instruc-tion Number 9, Exhibit H, Plaintiff's Motion for Summary Judgment [hereinafter Jury Instruc-tion].

nominee loans, Wright was a shareholder and the chairman of the board of directors for Oakland Forging. *See* Ronald Wright Deposition at 46–47, 53.

A jury found Wright guilty on nine counts of the indictment. *See* Verdict Forms, Exhibit F, Plaintiff's Motion for Summary Judgment [hereinafter Verdict Forms]. The District Court for the Southern District of Iowa sentenced him to concurrent eighteen-month prison terms on Counts 1, 9, 11, 13, and 15. The imposition of sentence was suspended and Wright was placed on concurrent three-year terms of probation for Counts 6, 10, 12, and 14. As a condition of probation, the district court ordered Wright to make restitution to the FDIC in the amount of $414,774.35 for Counts 6, 9, 10, 11, 12, 13, 14, and 15. *See* Judgment and Probation/Commitment Order, Exhibit G, Plaintiff's Motion for Summary Judgment. The conviction on Count 10 later was reversed by the Eighth Circuit Court of Appeals. *See United States v. Wright*, 835 F.2d 1245 (8th Cir.1987).

### Issues

Issue 1: Whether the debtor-defendant's obligation to pay restitution as a condition of his probation is nondischargeable as a matter of law, if the amount of the restitution equals the amount of the nominee loans.

Issue 2: Whether the debtor-defendant is collaterally estopped from litigating the issues of fraud and defalcation pursuant to 11 U.S.C. § 523(a)(4), if he was convicted on eight counts of misapplication of bank funds in violation of 18 U.S.C. § 656.

Issue 3: Whether the debtor-defendant is collaterally estopped from litigating the issue of willful and malicious injury to the Bank pursuant to 11 U.S.C. § 523(a)(6), if he was convicted on eight counts of misapplication of bank funds in violation of 18 U.S.C. § 656.

### Standard of Review

Bankruptcy Rule 7056 states that Federal Rule of Civil Procedure 56, governing summary judgments, applies in adversarial proceedings. Summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All facts must be viewed in the light most favorable to the party opposing the motion, and he must be given the benefit of all reasonable inferences. *Stokes v. Lokken*, 644 F.2d 779, 782 (8th Cir.1981). In consideration of a motion for summary judgment, the court may utilize the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits submitted by the parties. Rule 56(c).

### Issue 1: Restitution Obligation

As to Issue 1, this Court holds that Wright's obligation to pay restitution is nondischargeable as a matter of law pursuant to 11 U.S.C. § 523(a)(7). The restitution ordered by the District Court for the Southern District of Iowa is payable to and for the benefit of a governmental unit and is not "compensation for actual pecuniary loss." This holding is based on the following discussion.

▮ Before beginning an analysis under 11 U.S.C. § 523(a)(7), this Court finds that the restitution order in the instant case will be treated as a pre-petition obligation of debtor Wright, although he was not indicted, convicted, or sentenced until after the bankruptcy filing. Without deciding whether restitution is a "debt" or "claim," this Court recognizes the broad definition of "claim" as contained in the Code: a "right to payment, whether or not such right is reduced to judgment, ... unliquidated, ... contingent, ... [or] unmatured." 11 U.S.C. § 101(4). The legislative history of Section 101(4) states that this statute "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6266. Looking only at the time frame involved in this bankruptcy, the acts which gave rise to Wright's criminal liability occurred pre-petition. At that point in time, there existed the likelihood that the

criminal liability would be dealt with by some sort of criminal sanction, which could include restitution. The unmatured or contingent "obligation" existed pre-petition. *See* Hennigan, *Criminal Restitution and Bankruptcy Law in the Federal System,* 19 Conn.L.Rev. 89, 100 (1986); *cf. In re Zerodec Mega Corp.,* 59 B.R. 272, 275 (Bankr.E.D.Pa.1986) (all doubt as to the time that a claim arose should clearly be resolved in favor of finding it a pre-petition claim). In addition, if restitution was an obligation considered to arise at the time of sentencing, the prosecution could defer criminal proceedings until after the petition had been filed, and thereby escape operation of the bankruptcy laws. Hennigan, *supra,* at 100. Therefore, federal law and public policy militate in favor of treating the restitution as a pre-petition claim in this proceeding.

11 U.S.C. § 523(a)(7) excepts from discharge under 11 U.S.C. §§ 727, 1141, 1228(a), 1228(b), or 1328(b) any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss...." 11 U.S.C. § 523(a)(7). In *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court held that this provision of the Bankruptcy Code "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." *Id.* at 50, 107 S.Ct. at 361. In particular, the *Kelly* Court found that restitution orders imposed in criminal proceedings were nondischargeable within the meaning of Section 523(a)(7).

In *Kelly,* the debtor-defendant was ordered to make restitution for welfare fraud as a condition of her probation. *Kelly,* 479 U.S. at 39, 107 S.Ct. at 355. The Court first addressed whether Kelly's criminal restitution obligation was a debt within the meaning of the Bankruptcy Code. *Id.* at 49, 107 S.Ct. at 361. The Court found it unnecessary to decide whether criminal penalties were "debts" within the meaning of 11 U.S.C. § 101(4), because the debt, if it

was one, was nondischargeable.[2] *Id.* at 50, 107 S.Ct. at 361.

The Court next considered whether the restitution obligation was dischargeable, assuming that it was a debt. It stated that neither of the qualifying clauses of Section 523(a)(7) would allow the discharge of restitution. *Id.* at 51–52, 107 S.Ct. at 362. Its analysis focused on the true beneficiaries and purpose of restitution. The criminal justice system benefits society as a whole, and is not operated primarily for the benefit of crime victims. *Id.* The Court also reasoned that the victim had no control over the decision to impose restitution or the decision on the amount of restitution to be ordered. *Id.* Instead, the decision to impose restitution turns "on the penal goals of the State and the situation of the defendant." *Id.* The Court held that "[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation ... restitution orders imposed in such proceedings operate 'for the benefit of' the State ..." and "are not assessed 'for ... compensation' of the victim." *Id.* at 53, 107 S.Ct. at 362–63.

The Supreme Court's broad ruling, with its focus on the primary beneficiaries and purpose of criminal restitution orders, indicated that all restitution obligations should satisfy the two criteria of Section 523(a)(7). The identification of society and the state as the primary beneficiaries of the restitution obligation satisfied the limitation that the debt be "to and for the benefit of a governmental unit." *See* Tabb, *The Bankruptcy Reform Act in the Supreme Court,* 49 U.Pitt.L.Rev. 477, 546 (1988); *see also In re Thompson,* 77 B.R. 646, 648 (Bankr.E.D.Tenn.1987) (the Supreme Court reasoned that the restitution payments are for the benefit of the state, as a means of punishing and rehabilitating the criminal). The identification of the purpose of restitution as the punishment and the rehabilitation of the defendant satisfied the limitation that the debt not be compensation for actual pecuniary loss. *See id.* Therefore,

---

**2.** The Court expressed serious doubts whether Congress ever intended to make criminal penalties "debts" within the meaning of Section 101(4). *Id.* at 50, 107 S.Ct. at 361.

all restitution orders are placed within the meaning of Section 523(a)(7).[3] *Kelly*, 479 U.S. at 53, 107 S.Ct. at 363.

Although the Supreme Court's rationale in *Kelly* excepted all restitution orders from discharge, this Court believes that the Bankruptcy Code requires an analysis of the limitations of Section 523(a)(7) in each individual case. This Court finds that the two restrictions of Section 523(a)(7) would not apply in the present situation. First, the FDIC is a governmental unit. 11 U.S.C. § 101(26) defines a governmental unit as a "... department, agency, or instrumentality of the United States...." 11 U.S.C. § 101(26). The FDIC has been held to be an agency of the United States for purposes of Title 28 of the United States Code and the Federal Rules of Civil Procedure, as well as the Federal Tort Claims Act. *See Rauscher Pierce Refsnes, Inc. v. Fed. Deposit Ins. Corp.*, 789 F.2d 313, 316 (5th Cir.1986); *Safeway Portland Employees' Federal Credit Union v. Fed. Deposit Ins. Corp.*, 506 F.2d 1213, 1215 (9th Cir.1974). Therefore, the restitution obligation at issue is payable to and for the benefit of a governmental unit.

The second restriction of Section 523(a)(7) is that the restitution not be compensation for actual pecuniary loss. Because the criminal offenses at issue were committed prior to January 1, 1983, defendant Wright was sentenced under the Federal Probation Act, 18 U.S.C. § 3651, rather than the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579, 3580, now codified at 18 U.S.C. §§ 3663, 3664. *See* Victim and Witness Protection Act of 1982, Section 9(b)(2), Pub.L. No. 97–291, 96 Stat. 1248, 1258 (1982) (18 U.S.C. §§ 3579 and 3580 shall apply with respect to offenses committed on or after January 1, 1983). 18 U.S.C. § 3651 provides:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States *when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby*, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

. . . .

While on probation and among the conditions thereof, the defendant— ... may be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had....

18 U.S.C. § 3651 (emphasis added).[4]

The primary focus of any probationary condition imposed under 18 U.S.C. § 3651 is on the Government's interest in rehabilitation and justice, as demonstrated by the language of the statute. *See United States v. Lemire*, 720 F.2d 1327, 1353 (D.C. Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). In its analysis of a restitution order made pursuant to Section 3651, the Fifth Circuit Court of Appeals stated that "while recompense to the victim is a usually laudable consequence of restitution, the focus of any probation regime is on the offender." *United States v. Carson*, 669 F.2d 216, 217 (5th Cir.1982). The aim of an order of restitution is not to make the victim of the crime whole. *Id.* In particular, the victim cannot require restitution under 18 U.S.C. § 3651. Instead, the sentencing judge has broad discretion to choose probation in the first place and then to impose the conditions of probation that the court deems appropriate. *See United States v. Shackleford*, 777 F.2d

3. In cases decided since *Kelly*, it has been held that the rationale of the Supreme Court applies equally to restitution obligations imposed under sentences for federal crimes. *In re O'Connell*, 80 B.R. 475, 476 (Bankr.E.D.Mo.1987); *In re Boerger*, 67 B.R. 922, 925 (Bankr.W.D.Mo.1986). Therefore, the *Kelly* decision would apply in this proceeding, although Wright was convicted and sentenced in a federal district court.

4. 18 U.S.C. § 3651 was repealed effective November 1, 1987, pursuant to the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Section 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended by the Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, Section 4, 99 Stat. 1728 (1985).

1141, 1146 (6th Cir.1985); *United States v. Lemire*, 720 F.2d at 1352; *United States v. Carson*, 669 F.2d at 217; *United States v. Paulton*, 540 F.2d 886, 894 (8th Cir.1976). Restitution is only one of six enumerated, but not exclusive, conditions of probation under the statute. Therefore, restitution as a condition of probation pursuant to 18 U.S.C. § 3651 is focused on the defendant, is chosen by the judge within his or her discretion, remains a criminal sanction imposed for a violation of the law, and is not intended as direct compensation to the victim.

Defendant Wright argues that the amount of restitution owed to the FDIC represents the amount of loss suffered by that governmental agency, and thus is clearly compensation for the pecuniary loss suffered. Under 18 U.S.C. § 3651, restitution must relate to losses sustained by the victim. *United States v. Whitney*, 785 F.2d 824, 825 (9th Cir.1986). This connection between the defendant's culpability and the restitution amount furthers the rehabilitative purpose underlying the statute. *Id.* The sentencing court, however, is only prohibited from *exceeding* the amount of loss alleged in the indictment counts on which conviction is had. *Id.; United States v. Shackleford*, 777 F.2d at 1146. The statute does not require that the sentencing judge order restitution in the exact amounts alleged for all counts on which conviction is had. In the probation order issued by the Southern District of Iowa for defendant Ronald Wright, restitution was ordered only on Counts 6, 9, 10, 11, 12, 13, 14, and 15 of the conviction. The district court did not impose restitution on Count 1 of the indictment, which alleged misapplication of the Bank's funds by making a $60,000 nominee loan. Although the amount of restitution may be related to the loss that the government believes the defendant caused the aggrieved parties to suffer, the amount of restitution has no bearing on the underlying purpose of the restitution order. *See In re Pellegrino*, 42 B.R. 129, 137 (Bankr.D.Conn.1984). That purpose is the punishment and rehabilitation of the defendant. Thus, the restitution order imposed on Wright was not intended as compensation for actual pecuniary loss, but was intended as punishment and a method of rehabilitation for the offender.

Based on the *Kelly* holding that all restitution orders fall within the scope of Section 523(a)(7), the payment of the restitution to the FDIC, and the imposition of restitution that was intended as punishment, not compensation, this Court holds that the restitution obligation imposed as a portion of Wright's criminal sentence is nondischargeable as a matter of law, pursuant to Section 523(a)(7) of the Bankruptcy Code. No genuine issues of material fact remain to be resolved. The Court will grant the FDIC's motion for summary judgment on Count Three of its amended complaint, in the amounts of the restitution ordered on Counts 6, 9, 11, 12, 13, 14, and 15 of the criminal complaint. Because the amount of restitution was certain, the FDIC's request for pre-judgment interest from the date of sentencing will be granted. *See* S.D.C.L. § 21–1–11 (1987); *Simpson v. Norwesco*, 583 F.2d 1007, 1013–14 (8th Cir.1978); *First National Bank of Minneapolis v. Kehn Ranch, Inc.*, 394 N.W.2d 709, 717 (S.D.1986). Its request for costs will be denied.

### Issue 2: Defalcation By A Fiduciary

As to Issue 2, this Court holds that the debtor-defendant is collaterally estopped from litigating the issue of defalcation while acting in a fiduciary capacity. As a matter of law, Wright was a fiduciary with respect to the Bank. The issue of whether he committed a defalcation was resolved by Wright's conviction for misapplication of bank funds. This holding is based on the following discussion.

The doctrine of collateral estoppel provides that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Collateral estoppel has been recognized and applied in cases involving a bankruptcy court's determina-

tion of the discharge of a debt. *See, e.g., In re Wallace,* 840 F.2d 762 (10th Cir.1988), and cases cited therein; *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988); *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987). If, in the course of adjudicating a prior lawsuit, the court determined a factual issue using standards identical to those of Section 17 (now 11 U.S.C. § 523), then collateral estoppel would bar relitigation of those issues. *See Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *Klingman v. Levinson,* 831 F.2d at 1295.

In general, collateral estoppel may preclude relitigation of a factual issue if:

1) the issues in both proceedings were identical,

2) the issue in the prior proceeding was actually litigated and actually decided,

3) there was a full and fair opportunity for litigation in the prior proceeding, and

4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *see also In re Wallace,* 840 F.2d at 765; *Matter of Raiford,* 695 F.2d 521, 523 (11th Cir.1983).

■ It should also be noted that an issue previously litigated in a criminal action may be used as conclusive of an issue in subsequent civil litigation. *Gelb,* 798 F.2d at 43; *Matter of Raiford,* 695 F.2d at 523. Because the complainant's standard of proof is higher, and greater procedural protections attach in the criminal action, a conviction is a sufficiently reliable determination of the particular issue. *Matter of Raiford,* 695 F.2d at 523.

In this case, the issue sought to be precluded from litigation in this Court is whether or not Ronald Wright committed defalcation while acting in a fiduciary capacity. To establish nondischargeability of a debt for defalcation pursuant to 11 U.S.C. § 523(a)(4), the creditor must show:

1) that the defendant was acting in a fiduciary capacity with the plaintiff, and

2) while acting in a fiduciary capacity, the defendant committed a defalcation.

*See Kwiat v. Doucette,* 81 B.R. 184, 188 (D.Mass.1987); *In re Livingston,* 40 B.R. 1018, 1019 (E.D.Mich.1984); *In re Twitchell,* 72 B.R. 431, 434 (Bankr.D.Utah 1987).

The first element is the existence of a fiduciary relationship. A fiduciary relationship must be created by an express agreement of the parties, a statute, or a state law rule. *See In re Long,* 774 F.2d 875, 879 (8th Cir.1985). The fiduciary relationship must exist prior to the act complained of and "without reference thereto." *In re Johnson,* 691 F.2d 249, 252 (6th Cir. 1982), *citing Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–154, 79 L.Ed. 393 (1934); *see also In re Teichman,* 774 F.2d 1395, 1398 (9th Cir. 1985) (a fiduciary relationship must be created under an express trust as opposed to a trust created *ex maleficio,* constructively imposed because of the act of wrongdoing from which the debt arises).

The question of who is a fiduciary for purposes of Section 523(a)(4) is one of federal law. *In re Twitchell,* 72 B.R. at 434. State law, however, is an important factor in determining when a trust relationship exists. *Id.*

■ In the matter at issue, the existence of a fiduciary relationship can be determined as a matter of law. Ronald Wright, as a bank officer and director, owed a fiduciary duty to the Bank. It is established by Iowa case authority that a director and officer of a corporation is a fiduciary with respect to the corporation. *Bump v. Stewart, Wimer & Bump, P.C.,* 336 N.W.2d 731, 738 (Iowa 1983); *Linge v. Ralston Purina Co.,* 293 N.W.2d 191, 193 (Iowa 1980); *Des Moines Bank & Trust Co. v. George M. Bechtel & Co.,* 243 Ia. 1007, 1080–81, 51 N.W.2d 174, 216 (Iowa 1952); *see also Midwest Management Corp. v. Stephens,* 353 N.W.2d 76, 80 (Iowa 1984). It follows that the fiduciary duties for financial institution management are

the same as those owed by corporate directors and officers. *See Anaya v. Fed. Home Loan Bank Board,* 839 F.2d 1349, 1351 (9th Cir.1988), *citing* W. Knepper, *Liability of Corporate Officers and Directors,* 191–92 (3d ed. 1978); *Harper v. Rankin,* 141 F. 626, 630 (4th Cir.1905) (the relationship of a vice-president of a bank to the funds of a bank is that of a fiduciary); *Gadd v. Pearson,* 351 F.Supp. 895, 903 (N.D.Fla.1972) (a director or officer of a banking or other corporation owes a fiduciary obligation to the bank or corporation to exercise the utmost good faith in the exercise of his powers in the interests of the corporation).

Furthermore, the federal statutes on federally insured banks impliedly recognize the fiduciary duty of bank directors and officers to the bank. The Federal Deposit Insurance Corporation Act authorizes the FDIC to remove from office a director or officer of an insured bank if he or she engages in or participates in a practice which constitutes a breach of his or her fiduciary duty as such director or officer. 12 U.S.C. § 1818(e)(1) (1980). *Cf. In re Twitchell,* 72 B.R. at 434 (state statute authorized the commissioner of financial institutions to remove any officer of an institution who breached his fiduciary duty, and, therefore, by implication, the officers of financial institutions must be considered to occupy a fiduciary relationship).

The Eighth Circuit Court of Appeals recognized the fiduciary duty imposed on bank officers and directors pursuant to 12 U.S.C. § 1818(e)(1) in *Brickner v. Fed. Deposit Ins. Corp.,* 747 F.2d 1198 (8th Cir.1984). That court affirmed the FDIC's removal of two officers and directors of the Bank of Hoven, South Dakota, for breach of their fiduciary duties. *Id.* at 1202. *See also Lane v. Chowning,* 610 F.2d 1385, 1388–89 (8th Cir.1979) ("it is well settled that the fiduciary duty of a bank officer or director is owed to the depositors and the shareholders of the bank …").

The second requirement pursuant to Section 523(a)(4) is the commission of a defalcation. There is no precise definition of the term, "defalcation." It is often used to describe a broad variety of conduct, including "failure to meet an obligation; misappropriation of trust funds or money held in any fiduciary capacity; failure to properly account for such funds." *In re Anderson,* 64 B.R. 331, 334 (Bankr.N.D.Ill.1986), *quoting In re Alvey,* 56 B.R. 170, 173 (Bankr. W.D.Ky.1985). More simply, to prove a defalcation, it must be shown that the underlying trust fund was used for a purpose other than that contemplated by the trust. *See In re Gans,* 75 B.R. 474, 490 (Bankr.S. D.N.Y.1987).

██ The cases are in agreement that defalcation is evaluated by an objective standard, and that no element of intent or bad faith need be shown. *In re Johnson,* 691 F.2d at 254–55; *In re Codias,* 78 B.R. 344, 346 (Bankr.S.D.Fla.1987); *In re Gans,* 75 B.R. at 490; *In re Twitchell,* 72 B.R. at 435. In *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 511 (2d Cir. 1937), Judge Hand analyzed the use of the term, "defalcation," in a predecessor statute to Section 523(a)(4). He stated that "[w]hatever was the original meaning of 'defalcation,' it must here have covered other defaults than deliberate malversations, else it added nothing to the words, 'fraud or embezzlement.'" *Id.* Thus, defalcation is generally held to be a much broader term that either embezzlement or misappropriation, and does not need to be intentional conduct. *See In re Johnson,* 691 F.2d at 254; *In re Kelley,* 84 B.R. 225, 230 (Bankr.M.D.Fla.1988); *In re Twitchell,* 72 B.R. at 435.

In the present case, the federal jury found beyond a reasonable doubt that Wright had used the funds of a bank in a way proscribed by federal law. In the indictment, Wright was accused of willfully and knowingly misapplying and causing to be misapplied monies and funds of the Bank by making nominee loans. *See* Indictment, Exhibit E, Plaintiff's Motion for Summary Judgment [hereinafter Indictment]; *see also* 18 U.S.C. § 656. To satisfy the misapplication element of the crime, the jury had to find that either the defendant knew the debtor named in the loan was not aware that his name was being used

for the debt, or that the defendant assured the debtor that he would not be obligated to repay the loan and that the Bank would look solely to another source for payment. *See* Jury Instruction Number 9. The jury found beyond a reasonable doubt that the misapplication had occurred in nine of the nominee loans. *See* Verdict Forms.

The jury determined that Wright failed to make proper use of money entrusted to him in the manner required by law, so as to protect the depositors and shareholders of the Bank. The loan of money and the failure to inform the debtors that they would be responsible for repayment demonstrated that Wright disregarded the best interests of the Bank. He failed to ensure repayment of the Bank's investment in Oakland Forging by misleading the individuals who signed the notes. The appropriation of funds in this manner is definitely a use not contemplated by the underlying trust. It is a default in the duty or confidence imposed by the fiduciary relationship and clearly is a defalcation as contemplated by 11 U.S.C. § 523(a)(4).

Turning to the application of collateral estoppel, the above discussion establishes that the issue of the debtor-defendant's defalcation under Section 523(a)(4) and the misapplication of bank funds under 18 U.S. C. § 656 are one and the same. The issue of defalcation was actually litigated and decided in the criminal action. In fact, Wright received a full jury trial on the issue of misapplication, with a verdict of guilty on nine counts. Thus, the first two requirements of collateral estoppel are met.

Next, Wright received a full and fair opportunity to litigate the issue in the prior proceeding. In light of the seriousness of the charges, he had every incentive to fully litigate the criminal case. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 332, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979). He appealed his convictions and succeeded in obtaining a reversal on one count. *See Gelb*, 798 F.2d at 44 (appellate review plays a central role in assuring the accuracy of decisions). Thus, there is no unfairness to Wright in applying collateral

estoppel in this case and the third requirement is met.

Lastly, the determination of misapplication of funds was the pivotal issue in the criminal case, and no conviction would have resulted without this determination. Therefore, the issue sought to be precluded was necessary to a final judgment in the criminal proceeding.

The requirements of collateral estoppel have been met as to the issue of defalcation on the eight nominee loans alleged, proven, and not reversed in the criminal proceedings. The issue of fiduciary capacity is determined as a matter of law. There are no material issues of fact to be determined, and the Court will grant the FDIC's motion for summary judgment on its cause of action of nondischargeability pursuant to Section 523(a)(4) for the amounts of those eight nominee loans. Thus, the Court need not consider the issue of fraud, the FDIC's alternative basis of nondischargeability under Section 523(a)(4).

*Issue 3: Willful And Malicious Injury*

■ As to Issue 3, this Court holds that the doctrine of collateral estoppel would not preclude litigation of the debtor's alleged willful and malicious injury to the Bank pursuant to 11 U.S.C. § 523(a)(6). Although Wright's criminal conviction would establish the requirement of willfulness, it does not establish that the acts were done with malice. This holding is based on the following discussion.

11 U.S.C. § 523(a)(6) excepts from discharge under Sections 727, 1141, 1228(a), 1228(b), or 1328(b) any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity...." 11 U.S.C. § 523(a)(6).

The Eighth Circuit Court of Appeals has stated that the elements of willfulness and malice should be analyzed separately in considering this cause of action for nondischargeability. *In re Long*, 774 F.2d at 880. The court of appeals defined the first element, "willful," as meaning intentional or deliberate. *Id.* at 880; *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. at 365 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad-

min.News 5963, 6320; S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865. To put it another way, the conduct of the debtor must have been "headstrong and knowing." *In re Long*, 774 F.2d at 881. There appeared to be little dispute about the definition of this element. *Id.* at 880.

The requirement of malice was more difficult to define. *Id.* The Eighth Circuit concluded that a heightened level of culpable conduct must be found, going beyond reckless disregard of the entity's economic interests and expectancies. *Id.* at 881. Of course, this also means that the conduct must be more than negligent or accidental. *In re Nelson*, 67 B.R. 491, 497 (Bankr.D. Minn.1985). The Eighth Circuit panel went on to articulate the following test for finding "malice" pursuant to Section 523(a)(6): the conduct of the debtor must have been targeted at the entity requesting the relief, in the objective sense that the conduct was certain or almost certain to cause financial harm. *Id.* To put it differently, the question to be asked is whether the debtor acted with malice by intending or fully expecting to harm the economic interests of the entity. *Id.*

An objective test to determine malice may be used. *Id.* 774 F.2d at 881. Subjective expressions of malice are still relevant, but extrinsic evidence of an intent to cause harm can be used. *In re Nelson*, 67 B.R. at 498.

From a review of the collateral estoppel elements set forth in Issue 2, it is apparent that collateral estoppel would preclude litigation of the issue of willfulness pursuant to Section 523(a)(6). Wright was convicted on nine counts of willfully and knowingly misapplying and causing to be misapplied monies and funds of the Oakland Savings Bank by making nominee loans. *See* Indictment; *see also* 18 U.S.C. § 656. To satisfy the misapplication element, the jury was required to find that Wright knew that the nominee loans were made without the debtor's awareness that the debtor would be responsible for the loan in the event of a default. *See* Jury Instruction Number 9.

The jury had to find that the defendant knowingly and willfully committed an unlawful act. *See* Jury Instructions Numbers 11 and 12. Thus, willfulness is a necessary element of 18 U.S.C. § 656 and was actually litigated in the prior criminal proceeding.

But there is nothing in the indictment or the jury's required findings to show that the debtor acted with malice; that is, with the knowledge that the Bank's interest would almost certainly be harmed as a consequence of his acts. In fact, Jury Instruction Number 11 states that "[t]he intent requirement, however, does not mean that the motive or purpose behind the defendant's acts must have been to injure or defraud the bank." This instruction also suggests consideration of "whether the defendant acted in reckless disregard of the bank's interest ..." in determining the intent required. *Id.* Thus, the conviction for misapplication of funds pursuant to 18 U.S. C. § 656 requires a lesser standard of culpable conduct than is required for nondischargeability of a debt pursuant to Section 523(a)(6). *Cf. In re Vandrovec*, 61 B.R. 191, 197 (Bankr.D.N.D.1986) (a conviction for conversion of property, pursuant to 15 U.S.C. § 714m(c), established the element of willfulness, but not malice, pursuant to 11 U.S.C. § 523(a)(6)).

The question of malice in connection with the debtor's acts remains to be resolved. This element, needed to prove the nondischargeability of a debt pursuant to Section 523(a)(6), was not an issue or was not actually litigated in Wright's criminal proceeding. Therefore, collateral estoppel cannot be applied to preclude litigation of the debtor's willful and malicious injury to the Bank, or FDIC. Based on this conclusion, the Court will deny the FDIC's motion for summary judgment on the second count of its amended complaint.

### Conclusion

Based on the findings and conclusions above, this Court will grant summary judgment on the first and third counts of the FDIC's amended complaint; that is, its request for a determination of dischargeability pursuant to 11 U.S.C. §§ 523(a)(4) and

(a)(7). The Court will deny summary judgment on the plaintiff's second claim for relief pursuant to 11 U.S.C. § 523(a)(6). Accordingly, counsel for the FDIC should prepare a judgment in accordance herewith pursuant to Bankruptcy Rule 7056 and Fed.R.Civ.P. 56. Findings of fact and conclusions of law are unnecessary on decisions pursuant to Fed.R.Civ.P. 56. Fed.R. Civ.P. 52(a).