Gerald P. **BRICKNER** and Royce L. Hackl, Petitioners,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.**

No. 84–5142.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 29, 1984.

Decided Nov. 5, 1984.

---

Andrew J. Mitchell, Minneapolis, Minn., for petitioners.

Lisa M. Miller, Washington, D.C., for respondent.

Before BRIGHT, McMILLIAN and ARNOLD, Circuit Judges.

BRIGHT, Circuit Judge.

Gerald P. Brickner and Royce L. Hackl petition for review of an order issued by the Board of Directors of the Federal Deposit Insurance Corporation (FDIC) removing them from their positions as officers and directors of the Bank of Hoven (Bank), Hoven, South Dakota. We deny the petition and affirm the order of the FDIC.

## I. BACKGROUND.

Prior to the initiation of this removal action, petitioners Brickner and Hackl were, respectively, assistant cashier and vice president of the Bank. Both men were also shareholders and directors of the Bank. Jerome Seurer, a long time friend and associate of petitioners, was cashier and a fellow director. The only other members of the Bank's board of directors were Hackl's mother and Brickner's father, both of whom were in poor health and participated in a very limited way in the Bank's affairs. As cashier, Seurer exerted the greatest authority over the Bank's day-to-day operations, and was in charge of all extensions of credit. Neither Brickner nor Hackl had any reason to question Seurer's ability and integrity before the events in question here.

During 1981 and 1982, Seurer repeatedly made large, unauthorized extensions of credit to bank customer Darrell Rausch, mainly in the form of unposted debits (returned checks held by the Bank instead of being posted against Rausch's account). In addition, Seurer extended credit to Rausch by allowing checking account overdrafts and by holding items in the Bank's correspondent account. In the summer of 1981, FDIC examiners criticized the Bank for extending credit to Rausch through improper means and in excess of the Bank's legal lending limit. The president of the Bank asked Seurer to stop these improper practices, but petitioners discovered on at least three separate occasions in 1982 that Seurer had continued to make unauthorized and excessive grants of credit to Rausch. Petitioners confronted Seurer several times and told him to cease the improper activities. However, despite Seurer's repeated demonstrations that he could not be trusted

in this matter, petitioners accepted his assurances about the situation and took no effective steps to ensure that the lending stopped.

In 1982, petitioners and their co-directors approved several notes signed by Rausch, the proceeds of which were used to cover the unposted debits. At petitioners' request, Rausch and Seurer prepared a financial statement which indicated that sufficient collateral existed to support the entire credit line. Petitioners were aware that the total credit extended to Rausch far exceeded the Bank's legal lending limit, but apparently believed that the notes signed by Rausch were going to be participated to a much larger bank.

Neither Brickner nor Hackl disclosed the existence of the Rausch credit problem to regulatory authorities or to the other Bank directors until December 1982, when FDIC examiners discovered the transactions. By that time, the total credit extended to Rausch exceeded $1.2 million. Seurer resigned from the Bank at the request of the FDIC in January of 1983. Shortly thereafter, petitioners learned that the collateral securing Rausch's loans no longer existed, and that Rausch had filed for bankruptcy.

In July 1983, the FDIC issued Notices of Intention to Remove from Office against Brickner and Hackl pursuant to 12 U.S.C. § 1818(e)(1).[1] The FDIC alleged that petitioners had breached their fiduciary duties as bank officers and directors, and had demonstrated a willful or continuing disregard for the safety and soundness of the Bank, as a result of which the Bank had or probably would sustain substantial financial loss or other damage. The FDIC asked that both men be removed from office and

---

**1.** 12 U.S.C. § 1818(e)(1) provides in pertinent part:

Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank has * * * committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as such director or officer, and the agency determines that the bank has suffered or will probably suffer substantial financial loss

or other damage or that the interests of its depositors could be seriously prejudiced by reason of such * * * breach of fiduciary duty * * * and that such * * * breach of fiduciary duty is one * * * which demonstrates a willful or continuing disregard for the safety or soundness of the bank, the agency may serve upon such director or officer a written notice of its intention to remove him from office.

prohibited from further participation in any manner in the Bank's affairs.

After a formal hearing in November 1983, the Administrative Law Judge (ALJ) made extensive findings of fact, and concluded that petitioners had breached their fiduciary duties as directors of the Bank by failing to curtail Seurer's improper extensions of credit to Rausch and by failing to inform regulatory authorities of Seurer's activities. The ALJ recommended that petitioners be removed from their positions as directors, but allowed to continue as officers of the Bank.[2]

Both sides filed exceptions to the ALJ's recommended decision. On review, the Board of Directors of the FDIC adopted the ALJ's findings of fact in their entirety, and agreed in substance with the ALJ's conclusion that petitioners had breached their fiduciary duties as directors,[3] thereby demonstrating a continuing disregard for the safety and soundness of the Bank, and causing a substantial financial loss to the Bank. The Board rejected the ALJ's proposed remedy, however, and ordered petitioners removed from their positions as officers as well as directors, and prohibited them from further participation in any manner in the Bank's affairs. This appeal followed.

## II. DISCUSSION.

Petitioners do not dispute the ALJ's factual findings, but challenge the conclusions drawn from those facts. We must therefore determine whether, in light of those findings, the FDIC erred in reaching its ultimate conclusions.

2. Brickner resigned from his position as assistant cashier in the summer of 1982. Pending the outcome of this appeal, Hackl has continued as vice president of the Bank, and both petitioners have continued to serve as directors.

3. In contrast with the ALJ, the Board did not reach the issue of whether petitioners had a duty to inform regulatory authorities about Seurer's activities. Instead, the Board concluded that petitioners had breached their fiduciary duties in failing to inform the other two di-

### A. Breach of Fiduciary Duty.

Petitioners contend first that the agency erred in concluding that their conduct constituted a breach of fiduciary duty. They claim that in light of their long relationship with Seurer as a friend and business associate, they reasonably relied on his assurances that he would cease the improper lending practices. Although petitioners now realize that they should have taken stronger action to curb Seurer's activities, they maintain that their failure to do more amounted to an honest error of judgment, not a breach of fiduciary duty. They submit that their conduct did not fall below that which could be expected of reasonably prudent business persons in the same circumstances. Petitioners assert, moreover, that the agency's determination on this question of law is entitled to little deference, and that the court may freely substitute its own judgment.

Courts have variously characterized the determination that a party breached his fiduciary duty as a question of fact, *see, e.g., Perkins v. Clinton State Bank,* 593 F.2d 327, 332 (8th Cir. 1979) (trial judge's finding that the bank breached its fiduciary duty as escrow agent not clearly erroneous), and a question of law, *see, e.g., Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 895 (1st Cir. 1979) (whether certain acts constitute a breach of fiduciary duty is a question of law). In the present case, the issue might also be described as a mixed question of fact and law. *Cf. Electric Smith, Inc. v. Secretary of Labor,* 666 F.2d 1267, 1271 (9th Cir. 1982) (whether to affix certain labels to a party's conduct where the material facts are not in dispute is a mixed question of fact and law.)[4]

rectors of Seurer's conduct before December of 1982.

4. When reviewing an administrative agency's findings of fact, we may set aside those findings only if they are unsupported by substantial evidence. *See* 5 U.S.C. § 706(2)(E). We may apply a *de novo* standard of review when presented with questions of law, *see, e.g., First National Bank in Sioux Falls v. National Bank of South Dakota,* 667 F.2d 708 (8th Cir. 1981), although more limited review may be appropriate in certain cases. We observe that, when applying law

■ However we characterize the issue in the present case, we think it is appropriate to give some deference to the administrative agency's determination. Section 1818(e)(1) does not specifically define fiduciary duty and accords substantial discretion to the agency. The concept of fiduciary duty may, in differing circumstances, require fiduciaries to exercise varying degrees of vigilance and care. The FDIC has special expertise in the banking area, and extensive experience with the duties and responsibilities of bank officers and directors. The Board's conclusion that petitioners' conduct constituted a breach of their fiduciary duties as directors of the Bank can reasonably be drawn from the undisputed facts, and is, in the circumstances, entitled to deference on review by this court.

■ Indeed, even if we apply a *de novo* standard of review giving no deference to the agency's determination, we agree that Brickner and Hackl violated their fiduciary duties. Bank examiners warned petitioners in 1980 and 1981 that the Bank needed to control overdrafts and excessive extensions of credit. As the ALJ pointed out, such warnings should have led to greatly increased vigilance by petitioners over the Bank's lending practices. Instead, petitioners continued to entrust Seurer with the exclusive power to extend credit, and allowed him to operate without control even after they learned that he had continued to make loans to Rausch in an improper manner and in amounts far exceeding the Bank's legal lending limit. Although they knew that Seurer had disobeyed their directions to cease these unsafe and unsound practices, they allowed Seurer to mislead

them repeatedly, and failed to take appropriate action to curtail his activities. The undisputed facts amply establish that petitioners breached their fiduciary obligations. Thus, regardless of the standard of review applied, we must affirm the Board's conclusion on this issue.

**B. Culpable Conduct Under the Statute.**

■ Petitioners next contend that even if they breached their fiduciary duties, that breach did not rise to the statutory level of culpable conduct. In order to remove petitioners from office under section 1818(e)(1), the FDIC must show, *inter alia*, that Brickner and Hackl demonstrated a "willful or continuing disregard for the safety or soundness of the bank."[5] Petitioners argue that "willful or continuing disregard" constitutes a single standard which must be proved to show a violation of the statute. They further contend that even if separate standards exist for "willful" and "continuing" violations, both require the FDIC to establish that petitioners *intentionally* did something to endanger the safety of their bank. Petitioners maintain that their behavior amounted to no more than "mere unintentional mistakes in judgment," and therefore the FDIC failed to meet its burden of showing that removal was justified under the statute.

■ We have located no caselaw construing the language of section 1818(e)(1). We agree, however, with the agency's interpretation that "willful disregard" and "continuing disregard" present two distinct, alternative standards for removal. The use of the disjunctive "or" between the

---

to established or undisputed facts, the Supreme Court has sometimes substituted its own judgment for that of the agency, utilizing essentially a *de novo* standard of review (*see, e.g., Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977)), while at other times, the Court has applied a far more deferential, limited scope of review (*see, e.g., Immigration and Naturalization Service v. Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981)). See generally K. Davis, *Administrative Law Treatise,* § 30.00 (1982 Supp.), dis-

cussing inconsistencies in the scope of review utilized by the Supreme Court in such cases.

**5.** We reject petitioners' contention that the language of this phrase is "too vague to allow its application" absent some clarification by the FDIC. Although the language is somewhat imprecise, it conveys a "sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice." *Horn v. Burns and Roe,* 536 F.2d 251, 254 (8th Cir. 1976).

words "willful" and "continuing" in the statute reveals a clear intent to make either one an offense. *See United States v. Lane*, 464 F.2d 593 (8th Cir.), *cert. denied*, 409 U.S. 876, 93 S.Ct. 127, 34 L.Ed.2d 129 (1972), in which this court reached a similar conclusion in construing statutory terms connected by the word "or," noting that "[e]ven the strictest of construction could permit no different result. Congress has clearly said what it meant and it is not for us to say that it did not mean what it said." *Id.* at 595. We also agree with the agency's contention that although "continuing disregard" may require some showing of knowledge of wrongdoing,[6] it does not require proof of the same degree of intent as "willful disregard." In the present case, petitioners admittedly knew for months that Seurer was engaging in unsafe and unsound banking practices, yet they failed to disclose this knowledge to the other directors or to take suitable action to prevent substantial losses to the Bank. We find no error in the FDIC's determination that petitioners' conduct demonstrated the sort of "continuing disregard" contemplated by the statute.

### C. The Remedy.

▮ Finally, petitioners contend that in removing them from their positions as officers as well as directors of the Bank and prohibiting them from further participation in the Bank's affairs, the FDIC in-

voked a sanction grossly disproportionate to their culpability, and thus abused its discretion. We disagree. "Administrative agencies have considerable latitude to shape their remedies within the scope of their statutory authority." *Canadian Tarpoly Co. v. U.S. Int'l Trade Comm'n*, 640 F.2d 1322, 1326, 68 CCPA 121 (1981). *Cf. SEC v. Chenery Corp.*, 332 U.S. 194, 207–09, 67 S.Ct. 1575, 1582–83, 91 L.Ed. 1995 (1947). The relation of remedy to statutory policy is peculiarly a matter for the special competence of the administrative agency. *See American Power Co. v. SEC*, 329 U.S. 90, 112, 67 S.Ct. 133, 145, 91 L.Ed. 103 (1946). Thus, an agency's choice of remedies is generally not to be overturned unless the reviewing court finds that it is unwarranted in law or without justification in fact. *See Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973).

In the present case, section 1818(e)(5) grants the agency broad discretion to impose an appropriate remedy.[7] Moreover, section 1818(j)[8] provides that a person removed from office under section 1818(e) may not participate in any way in the bank's affairs, or serve as a director, officer, or employee of any bank without prior written approval of the FDIC, under threat of criminal penalty. Congress thus contemplated imposition of the sanction applied here, and, in light of the uncontested

6. The ALJ asserted that the necessity to prove some knowledge under both standards is signalled by the use of the word "disregard," which in this context suggests voluntary inattention. The FDIC concedes that Congress intended some sort of scienter requirement, and contends that the "continuing disregard" standard refers to a mental state short of "willfulness" and akin to "recklessness."

7. Section 1818(e)(5) provides in part that if the agency finds after a hearing "that any of the grounds specified in [the notice of removal] have been established, the agency may issue such orders of suspension or removal from office, or prohibition from participation in the conduct of the affairs of the bank, as it may deem appropriate."

8. Section 1818(j) provides:

Any director or officer, or former director or officer of an insured bank, or any other person, against whom there is outstanding and effective any notice or order (which is an order which has become final) served upon such director, officer, or other person under subsections (e)(4), (e)(5), or (g) of this section, and who (i) participates in any manner in the conduct of the affairs of the bank involved, or directly or indirectly solicits or procures, or transfers or attempts to transfer, or votes or attempts to vote, any proxies, consents, or authorizations in respect of any voting rights in such bank, or (ii) without the prior written approval of the appropriate Federal banking agency, votes for a director, serves or acts as a director, officer, or employee of any bank, shall upon conviction be fined not more than $5,000 or imprisoned for not more than one year, or both.

facts, we cannot say that it was an inappropriate remedy in this case. The agency acted within its statutory authority and did not abuse its discretion.

Accordingly, we affirm the order of the FDIC.