**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 3 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

RAMON M. CANDELARIA,

Petitioner,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,

Respondent.

No. 97-9515
(Petition for Review)
(No. 95-62e)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **McKAY**, and **LUCERO**, Circuit Judges.

Petitioner Ramon M. Candelaria seeks review of an order of respondent

Federal Deposit Insurance Corporation (FDIC) permanently removing him from

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

future participation in the affairs of any insured financial institution or organization.[1]  For the following reasons, we affirm.

## Facts

The basic facts in this case are undisputed.  Petitioner, a twenty-five year career banker, worked the last thirteen years of his career as a loan officer and senior loan officer for Sunwest Bank of Santa Fe, New Mexico.  Up until the discovery of the two loan transactions that triggered his resignation in lieu of termination from the bank on March 31, 1996, petitioner had an unblemished reputation in the banking industry.

The two loans which led to this action were approved by petitioner for his sister-in-law, Olivia Aleman.  The first loan, in the amount of $9,550, was approved on or about July 21, 1994, and the second, in the amount of $5,050, was approved on or about February 3, 1995.  The proceeds of both loans, disbursed as cashier's checks payable to Ms. Aleman, were endorsed by petitioner in Ms. Aleman's name and in his own name and deposited in petitioner's personal bank account.  None of the loan proceeds were ever disbursed to Ms. Aleman.

---

[1]  After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

When confronted with the loans following a bank auditor's discovery of the transactions, petitioner explained that Ms. Aleman was the true borrower who intended the proceeds of the loan to go to petitioner as payment for existing debt. It appears that, for an extended period of time prior to the loans, petitioner had been providing Ms. Aleman and her husband with sums of money for various personal needs. Petitioner claimed that Ms. Aleman's debt to him was approximately $15,000. During 1994 and 1995, petitioner suffered his own personal financial difficulties, and consequently decided that Ms. Aleman would have to repay the debt. Petitioner alleged that, because Ms. Aleman did not have the resources to repay the debt, they agreed that the loans from the bank would be necessary.

The promissory notes prepared by petitioner reflected Ms. Aleman's name and social security number, but petitioner's address and telephone number, thereby insuring that any correspondence regarding the loans would be sent to petitioner. Petitioner signed the notes on behalf of Ms. Aleman. Petitioner alleged that, because of medical reasons, Ms. Aleman could not travel from her home in Almogordo to Santa Fe to sign the notes and, therefore, she authorized petitioner to sign in her stead. Petitioner continually represented that he had Ms. Aleman's authority to sign the notes, indorse the checks, and personally use the proceeds. At the time of his resignation, petitioner agreed that the full amount of

the loans should be completely repaid from the assets of his pension investment account. Both loans were thus repaid.

The Board of Directors of the FDIC (the Board) issued a notice of intent to seek to have petitioner permanently prohibited from participation in the activities of any federally-insured banking institution. Following a hearing, an administrative law judge (ALJ) recommended that petitioner be removed from participation in the industry for a one-year period. Upon consideration of the ALJ's recommendation and both parties' objections and exceptions, the Board ordered petitioner permanently removed from participation in the affairs of any insured financial institution, with the reminder that the order was statutorily modifiable upon petitioner's application to the FDIC. The Board stated that the possibility of modification provided flexibility to petitioner and protection for the banking industry.

On appeal, petitioner states his appellate issues as (1) the Board's decision was not supported by substantial evidence, and (2) the Board did not adequately articulate its reasons for rejecting the ALJ's recommendation regarding the remedy to be imposed.

## Standard of Review

The Administrative Procedure Act, 5 U.S.C. § 706, governs appellate review of the Board's removal decisions. See 12 U.S.C. § 1818(h)(2); Hoyl v.

Babbitt, 129 F.3d 1377, 1382 (10th Cir. 1997); Grubb v. FDIC, 34 F.3d 956, 961 (10th Cir. 1994). "We review the Board's findings to determine whether they are supported by substantial evidence in the record." Id. (citing 5 U.S.C. § 706(2)(E), and Sunshine State Bank v. FDIC, 783 F.2d 1580, 1584 (11th Cir. 1986)). "[W]e must consider the findings of both the ALJ and the Board," and where, as here, the ALJ and the Board reached different conclusions, we must ascertain whether the Board provided sufficient reasons for rejecting the ALJ's conclusions. Id.; see also Harberson v. NLRB, 810 F.2d 977, 984 (10th Cir. 1987) (the Board must adequately articulate its reasons for rejecting the ALJ's recommendation).

**Substantial Evidence**

Pursuant to section 8(e)(1) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(e)(1), a determination as to whether a removal and/or a prohibition sanction may be levied must be predicated on a three-part conjunctive test determining whether an institution-affiliated party has: (1) violated a law, regulation, final cease-and-desist order, or participated in an unsafe or unsound practice, or breached a fiduciary duty; (2) as a result, exposed the bank to financial loss, or caused prejudice to the bank's depositors, or personally received financial benefit; and (3) committed the violation, practice, or breach with personal dishonesty or demonstrated a willful or continuing disregard for the safety or soundness of the bank. Therefore, to justify its order permanently

prohibiting petitioner from participation in banking activities, the Board must have shown substantial evidence of "at least one of the prohibited acts, accompanied by at least one of the three prohibited effects and at least one of the two specified culpable states of mind." Seidman v. Office of Thrift Supervision (In re Seidman), 37 F.3d 911, 930 (3d Cir. 1994).

In Grubb, 34 F.3d at 963-64, this court upheld a decision of the Board to permanently remove a director from the banking industry. The petitioner in Grubb was the majority shareholder and served as chairman of the board of a bank in Oklahoma. When, because of regulatory concern, the FDIC issued a cease and desist order requiring the bank strictly to adhere to its loan policies and to deny credit to questionable borrowers, the petitioner resigned as board chairman, but remained as a director. Id. at 958.

Following the cease and desist order, the bank extended credit to the petitioner and several of his business interests. The bank examiners determined these credit extensions to be in excess of the bank's legal lending limits. Id. at 958-59. The FDIC initiated a removal action alleging that the petitioner's actions constituted willful or continuing disregard for the safety and soundness of the bank. Id. at 960-61. Following a hearing, the ALJ recommended that the removal action be dismissed, but that the petitioner be assessed a $50,000 penalty. Id. at 961.

Although the Board adopted the ALJ's recommendation of a monetary penalty, it rejected the ALJ's recommendation that the removal action be dismissed, concluding that the petitioner had shown a willful or continuing disregard for the safety and soundness of the bank. Id. at 961. In so doing, the Board concluded that the extensions of credit to the petitioner for his personal benefit constituted unsafe and unsound banking practices, a breach of fiduciary duty, and a violation of federal banking laws and regulations. Id. at 962.

Moreover, the Board refused to excuse the repetitive nature of the violations simply because the petitioner became unable to repay the extensions of credit, or because the petitioner pledged collateral in response to repeated warnings by the banking regulators. Id. Finally, the Board rejected the contention that the petitioner's reputation in the banking industry should be viewed as a mitigating factor, concluding that the petitioner's prior good reputation made his actions all the more objectionable. Id. at 962-63.

On petition for review of the Board's decision in Grubb, this court held that § 1818(e) would be satisfied upon a showing that the person: "(1) violated the law, (2) the violation caused either losses to the bank or financial gain to the perpetrator, and (3) the violation constituted a willful or continuing disregard for the safety and soundness of the bank." 34 F.3d at 961. We held that "[w]illful disregard' and 'continuing disregard' present two alternative standards for

-7-

removal." Id. (citing Brickner v. FDIC, 747 F.2d 1198, 1202 (8th Cir. 1984)). We defined "willful disregard" as "deliberate conduct which exposed the bank to 'abnormal risk of loss or harm contrary to prudent banking practices,'" id. at 961-62 (quoting Van Dyke v. Board of Governors of Fed. Reserve, 876 F.2d 1377, 1380 (8th Cir. 1989)), and defined "continuing disregard" as actions which have been "'voluntarily engaged in over a period of time with heedless indifference to the prospective consequences,'" id. at 962 (quoting Docket No. FDIC-85-215e, 1986 F.D.I.C. Enf. Dec. (P-H) ¶ 5069 at 6741).

In affirming, this court concluded that the Board's decision in Grubb was supported by substantial evidence in the record as a whole, and that the Board adequately explained the reasons for its rejection of the ALJ's recommendation. Id. at 963. The analysis in Grubb guides our decision here.

In this case, the ALJ determined that there was no evidence that petitioner committed the crime of forgery, and there was insufficient evidence to establish that petitioner's actions constituted unsafe and unsound banking practices. The ALJ did find, however, that petitioner had breached his fiduciary duty by misusing his position at the bank for self-serving purposes, thus satisfying the misconduct element of § 1818(e)(1). The ALJ found that the effect element was satisfied, in that petitioner received financial gain and used that gain for his personal benefit.

As to the third element, culpability, the ALJ determined that the facts did not support a finding of personal dishonesty. The ALJ did find, however, that, although the evidence did not support a finding of continuing disregard, it did support a finding of willful disregard for the safety or soundness of the financial institution. The ALJ concluded that, while petitioner's conduct was troubling, under the circumstances, it did not warrant the ultimate sanction of permanent prohibition. The ALJ then recommended that the Board remove petitioner from the banking industry for a period of one year.

In reviewing the ALJ's recommendation, the Board found petitioner's description of the facts and events surrounding the two loans to be less credible. The Board noted that petitioner did not offer any explanation of why the loan papers were not sent by regular or overnight mail to Ms. Aleman for signature when it became apparent that she could not travel to Santa Fe. The Board found that the excuse proffered for the need to sign for Ms. Aleman could not have been "mere thoughtlessness on two separate occasions." Petitioner's Opening Br., Attach. A at 6.

The Board concluded that petitioner's precarious financial condition at the time, which precluded him from obtaining a loan directly from the bank, made it more than likely that petitioner was the actual borrower and Ms. Aleman only a fictitious borrower. Moreover, the Board opined that, Ms. Aleman's testimony

that she did not know anything about the terms of the loans, the duration, or even the amounts in question also undermined the credibility of petitioner's assertion that he was acting on Ms. Aleman's authority.

In concurrence with the ALJ, the Board found that petitioner had breached his fiduciary duty by making loans to a straw borrower for his own personal use, and that he created a conflict of interest by simultaneous representation of the bank and the borrower. The Board took issue, however, with the ALJ's finding that, although imprudent, petitioner's actions did not constitute an unsafe or unsound practice.

The Board concluded that petitioner's actions in signing the notes on behalf of Ms. Aleman constituted falsification of bank records, which is an unsafe and unsound practice, threatening the bank's regulatory system. Moreover, the Board rejected the ALJ's finding that, to constitute an unsafe or unsound practice, the action must have had an adverse financial effect on the bank, and declined to condone this conduct "regardless of the magnitude of the amount involved."[2] Id.

---

[2] The ALJ relied on In re Seidman, 37 F.3d at 929 (holding that imprudent actions, resulting in only minor losses to the banking institution, without more, do not constitute unsafe or unsound practices), to support the finding that petitioner's actions, although imprudent, did not constitute an unsafe or unsound practice. In rejecting this conclusion, and petitioner's argument that to constitute an unsafe or unsound practice, the action must have some significant adverse financial effect on the bank, the Board cites to the recent Supreme Court decision in United States v. Wells, 117 S. Ct. 921 (1997). In Wells, the Court held that materiality of

(continued...)

at 11. The Board took exception to the ALJ's finding that petitioner guaranteed the full repayment of both loans. The Board determined that "[w]hile [petitioner] did repay the loans after he was caught, and while he may have felt morally obligated to do so, there is absolutely no evidence that he 'guaranteed' the loans." Id. The Board did adjudge the ALJ's finding important, however, in that it supported the assertion that the true borrower was petitioner. In sum, the Board concluded that petitioner's actions were in breach of his fiduciary duties and constituted unsafe and unsound practice.

On the culpability prong of the test, the ALJ concluded that although petitioner's actions may have been imprudent, they did not constitute personal dishonesty. The ALJ supported this finding with the fact that, when confronted with his wrongdoing, petitioner freely admitted the transactions with candor and with no attempt to conceal. The Board determined the ALJ's focus to be misplaced. In concluding that petitioner's action did in fact constitute personal dishonestly, the Board opined that the pertinent question was whether petitioner

---

[2](...continued)
falsehood was not an element of the crime of making false statements to federally insured financial institutions when the statute does not expressly contain a materiality element. Id. at 926-27. The Board concluded that this holding served to limit Seidman's addition of an adverse financial effect requirement to a finding of unsafe or unsound practice. Because this issue was not propounded on appeal, and because it is not germane to our decision, we do not address the possible applicability of the Wells decision to this question.

acted dishonestly at the time of the transactions, not after he was caught and confronted.

Lastly, the ALJ found that, although petitioner did not act with continuing disregard, he did act with willful disregard for the safety and soundness of the bank. In rejecting the ALJ's finding of no continuing disregard, the Board concluded that the two transactions were not isolated, but connected, and therefore, representative of a continuing disregard. The Board rejected the ALJ's finding that, absent discovery, it was unlikely that petitioner would have repeated his actions in the future. Because of petitioner's rather precarious financial situation, and because Ms. Aleman was in no position to repay the loans, the Board opined that there was ample reason to believe that petitioner could have repeated the conduct.

In an effort to distinguish the facts of this case from those of Grubb, petitioner asserts that, in Grubb, the petitioner obtained the various extensions of credit after the issuance of a cease and desist order. 34 F.3d at 958. Petitioner asserts that this fact, coupled with his prior good reputation in the banking industry, precludes a finding of willful or continuing disregard. We do not agree. In Grubb, the petitioner also attempted to argue his past conduct and extensive banking experience to be mitigating factors. The Board found the petitioner's past conduct to be irrelevant, and in fact, to render his present conduct more

egregious. Id. at 962063. This court affirmed the Board's findings. Id. at 963; see also Hendrickson v. FDIC, 113 F.3d 98, 104 (7th Cir. 1997) (rejecting argument that petitioner's "unblemished" twenty-five year record and his support from the bank should "weigh against removal").

Here, the Board carefully considered the facts surrounding petitioner's actions. Our review of the record, including the findings and conclusions of the ALJ and the Board, indicate that the Board's findings that petitioner's conduct (1) constituted a violation of the law which resulted in personal gain, (2) was personally dishonest, and (3) constituted both a willful and continuing disregard for the safety and soundness of the bank, were supported by substantial evidence. It is well settled that, as a reviewing tribunal, "we may not substitute our own judgment for that of the agency." Hoyl, 129 F.3d at 1383. Accordingly, even if we may have decided differently, we will not disturb the agency's findings if they are supported by substantial evidence. See id. Moreover, we conclude that the Board offered sufficient and detailed reasons for its rejection of the ALJ's findings.

**Remedy**

Finally, petitioner asserts that the Board failed adequately to articulate its reasons for rejecting the ALJ's recommendation of a one-year prohibition. As a reviewing court, we give deference to the Board's choice of remedies "unless the

-13-

remedies formulated by the Board constitute an abuse of discretion or are otherwise arbitrary and capricious." Sunshine State Bank, 783 F.2d at 1584. "Under the arbitrary and capricious standard, we ascertain whether the agency examined the relevant data and articulated a rational explanation for its decision." Rapp v. United States Dep't of Treasury, 52 F.3d 1510, 1515 (10th Cir. 1995). Generally, we will set aside an agency's decision as arbitrary and capricious only if

> "the agency has relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Grubb, 34 F.3d at 963 (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). "The Board abuses its discretion when it imposes a removal sanction which 'is unwarranted in law' or 'without justification in fact.'" Id. (quoting Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185-86 (1973)) (further quotation omitted).

Here, the Board ordered petitioner removed from the First National Bank in Las Vegas, New Mexico, where he was employed at the time. It further prohibited petitioner from future participation in the activities of any insured financial institution or organization. In so doing, the Board referenced the statutory mechanism which would allow petitioner to seek reinstatement, a

procedure which functions to limit the severity of the remedial order.  See 12 U.S.C. § 1818(e)(7)(B).

As we noted in Grubb, once the Board had removed the petitioner from his position at the bank, it was required to impose an industry-wide prohibition.  See 34 F.3d at 964 (citing 12 U.S.C. § 1818(e)(7)).  Here, petitioner challenges the scope of the prohibition imposed and the sufficiency of the Board's reasons for rejecting the ALJ's recommendation of a lesser sanction.

Petitioner's only argument on this issue is that, even if the Board was correct in determining that all of the elements of § 1818(e)(1) had been established, the Board's characterization of its sanction decision as "remedial," Petitioner's Opening Br., Attach. A at 14 n.12, mandates the less harsh remedy of a one-year prohibition recommended by the ALJ.  He offers no authority in support of this contention or other argument for disturbing the Board's choice of sanction.

This court has carefully reviewed the Board's findings and conclusions as to petitioner's actions in relation to the loans in question, and, for the reasons previously articulated, has concluded that the Board's decision was supported by substantial evidence.  It is clear that petitioner was aware of the impropriety of his actions; that he personally benefitted from those actions; that his actions involved personal dishonesty and were a breach of his fiduciary duty; and that his

actions constituted, at a minimum, willful disregard for safe and sound banking practice. We therefore conclude that the Board's choice of remedy, although not one we would necessarily have imposed, was within its power and we cannot say that it constitutes an abuse of discretion or is otherwise arbitrary and capricious. We also conclude that the Board's thorough and detailed decision contained adequate reasons for its choice of remedy.

AFFIRMED.

Entered for the Court

Carlos F. Lucero
Circuit Judge